THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
SEP 1 0 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

DIONNE R. JONES, )
    Plaintiff, )
)
v. ) Civil Action No. 1:08cv166
)
VIRGINIA DEPARTMENT OF SOCIAL )
SERVICES, )
    Defendant. )

## MEMORANDUM OPINION

This Title VII[1] race discrimination matter is before the Court on defendant's motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. Both parties have fully briefed and argued the issues raised in defendant's motion and the matter is thus ripe for disposition. For the reasons that follow, defendant's motion for summary judgment must be granted.

### I.

Resolution of defendant's motion requires a detailed summary of the factual record. In this regard, the record reflects that by letter dated July 23, 2004, plaintiff Dionne Jones, a black female, was hired by Ron Harris, a black male, as a Program Administrative Manager III/District Manager for the Division of Child Support Enforcement (DCSE) of the Virginia Department of Social Services (VDSS). At the time plaintiff was hired, Harris was employed as the Assistant Director of DCSE.

Plaintiff began her term of employment at the Fairfax Branch Office of DCSE on July 28, 2004, with Harris acting as her supervisor. In accordance with State policy, plaintiff was to serve a 12-month probationary period, as confirmed in her offer of employment letter. During this

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.*

1

probationary period — indeed, during the first six months of plaintiff's employment — Harris noted several deficiencies in various aspects of plaintiff's performance and management ability. For example, on one occasion, the DCSE Director had requested certain information concerning a specific case that he was reviewing. Harris forwarded the Director's inquiry to plaintiff, noting that a response was required by 9:30 a.m. the following morning. When Harris did not receive the requested information from plaintiff by the 9:30 a.m. deadline, Harris contacted the Fairfax Branch Office and discovered that plaintiff was not available. Harris therefore had to secure the information himself from one of plaintiff's direct reports. Harris later "counseled [plaintiff] for her negligence" in this regard. Harris Aff., ¶ 4. Plaintiff does not dispute Harris's account of the incident, but states in her defense that she had been experiencing computer problems around that time, which she claims may explain why she did not respond to Harris' email inquiry on the day it was sent. She further asserts that she does not recall being unavailable the following day, as Harris contends.

A similar situation occurred shortly thereafter when a request for information was made by the VDSS Commissioner's Office. On this occasion, plaintiff again failed to submit a response to the inquiry by the required deadline. Harris attempted to contact plaintiff several hours after the response was due, after which plaintiff crafted a response that Harris claims "substantively failed to address the questions posed." Harris Aff., ¶4. Plaintiff was again verbally reprimanded by Harris for this incident. As with the first incident, plaintiff does not dispute that the incident occurred as described; she concedes she missed the required deadline on this occasion, too. In this instance, she contends that she was not aware of the deadline until Harris contacted her after the deadline had expired because she had not scrolled down to the bottom of Harris's original email message where the deadline was noted.

On another occasion, plaintiff was assigned the task of preparing a "Notice of Intent to Terminate" a specific DCSE employee. According to Harris, the Notice prepared by plaintiff in this

2

regard contained inconsistent dates and information, thus causing confusion over the employee's actual termination date, as well as the time within which the employee was entitled to respond to the termination Notice. Harris verbally reprimanded plaintiff regarding this incident, as well. For her part, plaintiff concedes that the Notice contained inconsistent dates, but notes that she did not change the dates before it was sent out to the employee because she believed the Human Resources Department had already approved the letter. Plaintiff further contends that she referenced the apparent inconsistency contained in the Notice in an email to Harris, but that Harris did not respond.

Next, on three separate occasions, plaintiff was asked to prepare correspondence for the DCSE Director's signature. On each occasion, Harris contends that the draft correspondence prepared by plaintiff was poorly constructed and "incomprehensible." Harris Aff., ¶ 6. Then, when questioned by Harris about the draft correspondence, plaintiff was apparently "unwilling to see anything wrong and seemed unwilling to correct the mistakes." *Id.* Plaintiff, in her defense, claims that one of the letters in question involved a particularly complex issue and that the other two letters were not "incomprehensible," as Harris contends.

Harris signed a written Probationary Progress Review of plaintiff on December 14, 2004, during her fifth month of employment. In that review, Harris concluded that plaintiff was performing "Below Contributor" level, noting specifically that her "[p]erformance shows deficiencies, which interfere with the attainment of performance expectations." Def. Mot., Exh. C. Harris further noted that plaintiff "has shown some difficulty in adapting to required processes and protocols to advance her effectiveness;" he thus recommended that plaintiff "pay closer attention to instructions provided; focus on proven managerial principles in decision-making; and develop a system to ensure written communications emanating from her office are clear and concise." *Id.* Harris discussed all of these performance issues and recommendations with plaintiff at great length in the course of the evaluation

process. Harris Aff., ¶ 7.

Plaintiff submitted a written response to Harris's Probationary Progress Review on December 21, 2004. In her response, plaintiff did not address or accept responsibility for any of the alleged deficiencies in her performance, but instead attempted to transfer responsibility for the incidents to Harris and other upper management officials. Specifically, she first argued, incorrectly, that the Probationary Progress Review was untimely, claiming that "[t]he three month evaluation...was due [October 23, 2004]."[2] Plaintiff went on to state that this alleged untimeliness of her evaluation "is representative and suggestive of sporadic and crisis style communications received" from management. Def. Mot., Exh. C. Plaintiff also noted that she was new to the office[3] and that alleged "allegiance by the staff to upper management...has been detrimental to...[plaintiff's] effectiveness and authority." *Id.* Significantly, nowhere in plaintiff's response to her Probationary Progress Review did she mention her race or the race of any other individual; she also made no allegations of racial animus on the part of Harris or anyone else at VDSS.

Plaintiff's alleged performance problems continued beyond her Probationary Progress Review and into the new year. In this regard, on December 4, 2004, the DCSE Director issued instructions to certain VDSS employees, including plaintiff, concerning the completion and submission of the

---

[2] The Probationary Progress Review form allowed the reviewer to choose among four review intervals: (i) "3-month," (ii) "6-month," (iii) "Probationary Period End" and (iv) "Other." In this case, Harris marked the "Other" box and indicated that he was completing a 4-month review of plaintiff's performance.

[3] Plaintiff specifically stated that "[d]ue to employee's newness to the organization and hesitancy in the knowledge processes and procedures of this organization, questions and criticisms of work product directives were made mildly and in deference to senior management authority's knowledge and judgment." Def. Mot., Exh. C. Plaintiff further stated that "[r]equests for actions have been made without proper foundations or with instructions lacking in specificity to a new employee, lacking sufficient knowledge of the organizational processes, to ask cogent questions." *Id.*

Commonwealth's Statement of Economic Interest — a state administrative form required to be filed by those employees. In the instructions, the Director clearly indicated that the employees' forms were to be submitted to a specific DCSE personnel officer for tracking purposes no later than January 4, 2005. Several days before this deadline, on December 29, 2004, Harris sent a reminder email to plaintiff and the other district managers of the upcoming deadline. Yet, as of January 4, 2005, plaintiff's form had not been received. Thereafter, when questioned by Harris about her failure to submit the form by the required deadline, plaintiff told Harris that she had mailed the form directly to the VDSS Division of Human Resource Management (DHRM) on January 5, 2005, the day after the deadline. She further admitted to Harris that she had not read the Director's instructions in their entirety and that she mistakenly believed she had until January 7, 2005 — the deadline established by the DHRM — to submit the form. Following this incident, on January 8, 2005, Harris issued plaintiff a written reprimand for "failure to follow supervisory instructions," noting that plaintiff's failure to follow his instructions regarding the Statement of Economic Interest, as well as the explicit instructions of the DCSE Director, was "unacceptable." Harris Aff., ¶ 9.[4]

Shortly after this incident, Harris, by letter dated January 21, 2005,[5] informed plaintiff of his

---

[4] Harris's disciplinary memorandum specifically advised plaintiff, *inter alia*, that "[y]our failure to follow instructions compromised the schedule established between the Division of Child Enforcement and the Division of Human Resource Management, not to mention being a direct violation of the directive issued by the DCSE Director. This behavior is unacceptable, particularly from a manager." *See Jones v. Virginia Dep't of Social Services*, 1:08cv166 (E.D. Va. August 1, 2008) (Document 35-2, p. 22).

[5] Prior to sending this letter, Harris consulted with the VDSS Human Resource Employee Relations Manager, Harold Hobson, as well as the VDSS Deputy Commissioner, Nathaniel Young. Moreover, in response to the Commissioner's inquiry, Harris wrote a 3-page memorandum to Young on January 20, 2005, outlining the issues that prompted Harris's "action to seek the removal of Ms. Jones from her district manager position." Def. Mot., Exh. F. In that memorandum, Harris noted, *inter alia*, that "[d]uring her short tenure, [plaintiff] has on numerous occasions: 1) exercised poor managerial judgment and, 2) failed to follow supervisory instructions." *Id.* Harris went on to

intent to terminate her employment with the DCSE, effective January 31, 2005. The notice of termination explained that the "primary reason for this action is [plaintiff's] failure to adapt to the protocols and processes of the Division of Child Support Enforcement; specifically...failure to follow supervisory instructions in completing assignments, and the exercising of poor managerial judgment." Def. Mot., Exh. G. Harris's January 21, 2005 letter placed plaintiff on pre-disciplinary leave status, effective immediately, pending either her resignation or job termination on January 31, 2005. Plaintiff was thus given until January 28, 2005, to submit a written response to the notice of termination or to tender her resignation in lieu of termination. *Id.*

On January 28, 2005, plaintiff submitted a 3-page response to Harris's January 21, 2005 notice of termination letter. In her response, plaintiff stated, *inter alia*, (i) that she did not "believe that any inadvertent action of mine substantively or negatively affected the DCSE business, its customers, employees or its internal controls to conduct its business," and (ii) that "[t]he behavior of the agency towards my position and me constitutes harassment, which according to DSS personnel policies and procedures is not acceptable and will not be tolerated for any reason." Def. Mot., Exh.

---

describe all of the alleged performance deficiencies in detail, concluding the memorandum with the following telling statement:

> Individually, the infractions are not horrendously egregious; however, collectively, they are representative of a pattern of exercising poor judgment and failures to follow instructions, both of which are not conducive to good leadership...Given that Ms. Jones refuses to accept responsibility for her actions and has demonstrated that she cannot handle the simplest of matters and exercise good judgment, it has become apparent that she should not be entrusted with the responsibility of managing the day-to-day operations of a district office.

*Id.*

H. Moreover, as with her response to her Probationary Progress Review, plaintiff did not accept personal responsibility for any of the alleged performance deficiencies previously noted by Harris, stating instead that "[f]ailure, if any, to complete direct agency assignments would be due to poor supervision, lack of clear instructions and unreasonable expectations on the part of management....As such, responsibility for any such failures lies with management." *Id.* And again, nowhere in plaintiff's January 28, 2005 response did she mention her race or allege that race was in any way a motivating factor in her termination.

Following "careful consideration of [plaintiff's] response," as well as consultation with VDSS human resources personnel, Commissioner Young wrote to plaintiff on February 1, 2005, advising her of VDSS's decision to proceed with the termination recommended by Harris. Def. Mot., Exh. I. Thus, plaintiff's last day of employment with VDSS was January 31, 2005. Thereafter, the District Manager position previously held by plaintiff was apparently filled by the former Acting District Manager of the Fairfax Branch Office of DCSE, namely Faye McCauley, a white female.

On July 29, 2005, six months following her termination, plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Office (EEOC) and the Fairfax County Human Rights Commission, alleging that she had been discriminated against by VDSS on the basis of her race. Specifically, plaintiff alleged in her administrative charge that she

> was one of two Black District Managers and I believe that I was subjected to different terms/conditions than my predecessors former Acting Director Faye McCauley (Caucasian) and the former District Manager (Caucasian female). After my termination, for alleged violations of company policies and procedures by Deputy Commissioner/Director Nathaniel L. Young (Caucasian), I found out that the former Acting Director McCauley was hired as the new District Manager.

7

Def. Mot., Exh. B. At the time the initial EEOC charge was filed, plaintiff's reported mailing address was P.O. Box 1977, Clinton, MD 20735.

On February 27, 2007, more than a year and a half after she filed her administrative charge, plaintiff wrote to the EEOC Office of the Inspector General inquiring about the status of her case and advising the EEOC that she had moved to a new address — 6008 Burdon Court, Apartment #301, Alexandria, VA 22315. Approximately a month later, by letter dated April 2, 2007, plaintiff was advised by the Director of the EEOC's Washington Field Office that her administrative charge had been transferred to EEOC's Tampa Field Office for processing, "as part of an EEOC workload redistribution...." Def. Mot., Exh. J. The April 2, 2007 letter was sent to plaintiff at her new Burdon Court address.

On April 25, 2007, shortly after plaintiff's administrative charge had been transferred, an investigator from the Tampa Field Office, David Hamilton, sent a letter to plaintiff at the Burdon Court address advising her that she had ten days in which to submit a response refuting defendant's position statement and that in the event she failed to do so, her charge could be dismissed without her input. Def. Mot., Exh. K. Hamilton further advised plaintiff that once she received a dismissal notice from the EEOC, she would have 90 days within which to file a private suit in federal or state court. *Id.* The record further reflects that plaintiff also had a telephone conversation with Hamilton on April 25, 2007, during the course of which Hamilton told plaintiff, *inter alia*, that he had been assigned to review her administrative file and to make a decision on plaintiff's charge of discrimination.

On April 26, 2007 — the day after Hamilton's letter — plaintiff wrote to the EEOC Tampa Field Office Director to inquire about the lengthy administrative process and to lodge a complaint

about the way Hamilton had spoken to her in the course of their earlier telephone call. The Director of the Tampa Field Office, Manuel Zurita, subsequently responded to plaintiff's letter on May 2, 2007, sending his response to plaintiff's Burdon Court address. Def. Mot., Exh. L. In this letter, Zurita reviewed the progress of the administrative investigation, as well as the parties' respective positions concerning plaintiff's charge of discrimination. For example, Zurita noted that plaintiff "does not accept responsibility for any of the deficiencies noted but in fact seeks to transfer responsibility for the deficiencies to [her] supervisor." *Id.* Zurita further noted that plaintiff does not "deny any of the charges the employer has made against you and which are used to justify your termination," but instead "ascribe[s] [her] failure in the position to [her] newness and unfamiliarity with the regulations and procedures." *Id.* In the end, Zurita concluded that "it appears the matter is self-defeating," as plaintiff's "very statements support the employer's legitimate non-discriminatory reasons for [her] termination." *Id.* Zurita further stated that any consideration of alleged racial animus in this matter "is complicated by the fact that your supervisor [Harris] was a Black male." *Id.* In the end, Zurita's May 2, 2007 letter concluded with the following instructions to plaintiff:

> If you believe the evidence in support of your case is available, please provide the information as soon as possible. If we have not received a response from you within 10 days of this letter, we will process the dismissal and send [it] to you by certified mail. If you wish to pursue this matter further after the dismissal, you may only do so by filing a private law suit in this matter within 90 days after your receipt of the Dismissal and Notice of Rights.

*Id.*

Plaintiff concedes that she received Zurita's May 2, 2007 letter and that she did not file a written response within the 10-day period specified therein. Thus, the EEOC issued a Dismissal and

9

Notice of Rights to plaintiff on June 21, 2007; the Notice was sent by certified mail to plaintiff's Burdon Court address. In this regard, tracking records from the U.S. Postal Service reflect that notice of the certified letter was left at plaintiff's Burdon Court residence on June 25, 2007. Yet, as of July 14, 2007, the certified letter remained unclaimed at the Alexandria Post Office and it was ultimately returned to the EEOC Tampa Field Office on July 19, 2007.

Plaintiff offers no explanation as to why she did not receive either the EEOC's June 21, 2007 Notice or the notice from the Post Office advising her that a certified letter was being held for her at the Alexandria Post Office, other than to recognize that the Postal Service is not infallible. And, to illustrate her diligency in the administrative process, she points out that she contacted the EEOC several times by telephone between August and November 2007 to inquire about the status of her charge.[6] On the first occasion, in August 2007, plaintiff claims she was advised by an EEOC representative that a Notice had indeed been issued on June 21, 2007, but that the Notice had been returned to the EEOC as unclaimed. The EEOC representative apologized to plaintiff for this occurrence and advised plaintiff that the Notice would be resent promptly. Plaintiff then called the EEOC a second time, sometime in September 2007, when she still had not received the Notice after several weeks. This time, an EEOC representative apologized to her again, acknowledging that the Notice had not yet been resent. The representative advised plaintiff that the EEOC was extremely busy and behind in sending mail, but assured her that a copy of the June 21, 2007 Notice would be resent promptly. Yet, approximately two additional months passed and plaintiff still had not received a copy of the Notice. Therefore, plaintiff again called the EEOC concerning this issue

---

[6] Plaintiff has produced Verizon telephone records confirming that several outgoing calls were made from her wireless telephone number to a telephone number registered to the EEOC in Tampa, Florida on July 31, October 24, October 26, November 19 and November 20, 2007.

sometime in November 2007, this time advising an EEOC representative that she was moving to a new residence later that month. She therefore provided the EEOC her new mailing address, namely 5300 Holmes Run Parkway, Apartment #503, Alexandria, VA 22304.[7] Also in mid-November, plaintiff wrote a letter to the EEOC Tampa Field Office, specifically requesting copies of certain documents from her administrative file, including the aforementioned Notice.

By letter dated November 20, 2007, Juanita Smith, a Supervisor from the Tampa Field Office, responded to plaintiff's letter request for documents. In the November 20 letter — which was mailed to plaintiff's new Holmes Run Parkway address — Smith advised plaintiff that "information may be disclosed from Title VII and Disability charges on the condition that the individual requesting disclosure has provided a signed EEOC Form 167, Agreement of Non-Disclosure, **prior to expiration of your Notice of Right to Sue**." Def. Mot., Exh. P (emphasis in original). Smith included a copy of EEOC Form 167 with her letter and requested that plaintiff forward the signed form to the Tampa Field Office. Smith also faxed a copy of EEOC Form 167 to plaintiff on November 20, 2007, and plaintiff promptly signed and faxed the form back to Smith later that day. Transcript of July 25, 2008 Hearing, p. 9.

In the end, the record reflects that plaintiff first received a copy of the EEOC's June 21, 2007 Dismissal and Notice of Rights on November 27, 2007.[8] And, although plaintiff may have been made aware of the existence of the June 21, 2007 Notice in the course of her earlier telephone conversations with EEOC representatives between August and November 2007, the record reflects

---

[7] Plaintiff concedes that she resided at the Burdon Court address until November 19, 2007, at which time she moved to 5300 Holmes Run Parkway.

[8] Plaintiff has submitted a copy of a post-marked envelope from the EEOC's Tampa Field Office dated November 21, 2007, in which she presumably received the June 21, 2007 Notice.

11

that she was not aware of the specific contents or legal implications of the Notice prior to receiving and reviewing it in November 2007. Nor did plaintiff have the assistance or advice of an attorney at any point during the administrative proceedings.

On February 25, 2008 — within 90 days of her actual receipt of the EEOC's June 21, 2007 Notice — plaintiff, proceeding *pro se*, filed the instant Title VII race discrimination action against VDSS. VDSS thereafter filed a prompt motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P., arguing essentially (i) that plaintiff's complaint was untimely as it was filed more than 90 days after issuance of the EEOC's June 21, 2007 Notice, and (ii) that plaintiff has failed to establish a *prima facie* case of race discrimination. Together with VDSS's motion for summary judgment, plaintiff was advised, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that she had the right to file counter-affidavits or other responsive material contesting the affidavits or records filed by VDSS, which she later did. Both parties also filed supplemental memoranda following a hearing held on July 25, 2008, at which plaintiff, at the Court's *sua sponte* request, provided sworn testimony relevant to the timeliness issue raised in VDSS's motion. Thus, as the matter has been fully briefed and argued by both parties, VDSS's motion for summary judgment is now ripe for disposition.

## II.

On a motion for summary judgment, the moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). Summary judgment is

appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Rule 56, Fed. R. Civ. P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A mere scintilla of evidence is insufficient in this regard; rather, the evidence must be sufficient for a reasonable factfinder to find in the non-movant's favor on the disputed element. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). And, where a summary judgment motion is made and adequately supported, the non-movant may not merely rest on allegations in the pleadings, but must set forth by affidavit or otherwise specific facts demonstrating that a triable issue of fact exists. *See* Rule 56(e), Fed. R. Civ. P. In this regard, the opposing party must do more than "simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986).

### III.

Before turning to the merits of plaintiff's Title VII claim, it is first necessary to address VDSS's argument that the instant action was not timely filed. In this regard, it is well-settled that the EEOC must notify a charging party when it has ended its administrative investigation, and that "ninety days after the giving of such notice a civil action may be brought [by the charging party] against the respondent named in the charge." 42 U.S.C. 2000e-5(f)(1). It is equally clear that actual receipt of the EEOC's notice by the charging party is not required in the Fourth Circuit for the 90-day statutory time limit to begin running. *See Watts-Means v. Prince George's Family Crisis Center* (4th Cir. 1993) (recognizing that "delivery of a right-to-sue letter to a plaintiff's home triggers the

limitations period even if the plaintiff does not actually receive the letter") (citing *Harvey v. City of New Bern Police Dept.*, 813 F.2d 652, 654 (4th Cir. 1987)). Thus, the Fourth Circuit has recognized that "the limitations period is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up." *Id.*

Despite these clear principles, the Supreme Court has nonetheless recognized that a charging party may, in appropriate circumstances, be entitled to the benefit of equitable tolling in order to extend the 90-day time limit to file suit in state or federal court following dismissal of an administrative charge. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 (1984). In this regard, equitable tolling is "reserved for those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (internal quotation marks omitted). Thus, in order to demonstrate entitlement to equitable tolling, a plaintiff must "present (1) extraordinary circumstances, (2) beyond [her] control or external to [her] own conduct, (3) that prevented [her] from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (internal quotation marks omitted).

These principles, applied here, compel the conclusion that equitable tolling is warranted. Indeed, although the EEOC completed its administrative investigation and sent to plaintiff, by certified mail, a Dismissal and Notice of Rights dated June 21, 2007, the record reflects that plaintiff did not receive the EEOC Notice at that time; nor did she receive the notice left by the Postal Service advising her that a certified letter was being held for her at the Alexandria Post Office. Rather, the record reflects that plaintiff did not receive a copy of the EEOC Notice until November 27, 2007, after she had contacted the EEOC several times between August and November to inquire about the

14

status of her case and to request that a copy of the EEOC notice be sent to her. And, although plaintiff may have been made aware by EEOC representatives of the existence and issuance of the June 21, 2007 Notice prior to expiration of the 90-day statutory filing period, there is nothing in the record to suggest that she was aware of the specific contents or legal implications of the Notice, including specifically the 90-day filing deadline, prior to receiving and reviewing the Notice in November 2007.

Significantly, this case does not present a situation where plaintiff "failed to exercise due diligence in preserving [her] legal rights." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) (recognizing that "[w]e have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights"). To the contrary, the record reflects that plaintiff contacted the EEOC on multiple occasions throughout the administrative proceedings in an attempt to learn the status of her case and to receive documents pertaining to her administrative charge; she also notified the EEOC promptly of all applicable address changes.[9] Moreover, plaintiff has presented sufficient evidence of circumstances "beyond [her] control or external to [her] own conduct...that prevented [her] from filing on time," namely her

---

[9] VDSS's original argument against application of the doctrine of equitable tolling in this instance was that plaintiff had not received the EEOC's June 21, 2007 Notice due to her own failure to keep the EEOC abreast of her current address. *See Panyonouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 797 (E.D. Va. 2007) (finding "no recognized equitable grounds" to toll the 90-day filing period where the plaintiff failed to notify the EEOC of an address change and did not personally receive the right to sue letter as a result of this failure) (citing *Harper v. Burgess*, 701 F.2d 29, 30 (4th Cir. 1983)). Yet, following sworn testimony by plaintiff at the July 25, 2008 hearing in this matter, it became apparent that this particular argument lacked merit, as the record clearly reflects that plaintiff lived at the Burdon Court address until November 19, 2007, long after the EEOC's June 21, 2007 Notice was sent to her by certified mail at that address. The record further reflects that plaintiff promptly informed the EEOC of her new Holmes Run Parkway address in November 2007, as confirmed by the fact that all subsequent EEOC correspondence was sent to plaintiff at this new address.

unexplained failure to receive the EEOC's certified letter in June 2007 and the EEOC's subsequent failure to send her a copy thereof, despite her repeated requests, until November 2007. *Sosa*, 364 F.3d at 512. In the circumstances, therefore, plaintiff is entitled to the benefit of equitable tolling and her complaint, although filed more than 90 days after issuance of the EEOC's June 21, 2007 Notice, is deemed timely.

## IV.

Given that plaintiff has overcome the timeliness hurdle, the next step in the analysis is to address the merits of her discrimination claim. In this regard, the necessary showing to survive a motion for summary judgment in a Title VII case is clear and well-settled. Under the familiar *McDonnell Douglas/Burdine* proof structure,[10] a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, n. 13. Once the plaintiff has established a *prima facie* case, the defendant may then rebut the presumption of discrimination by proffering a legitimate, non-discriminatory reason for the challenged employment action or disparate treatment. *See id.* This burden is one of production, not persuasion, and thus, "it can involve no credibility assessment." *See Burdine*, 450 U.S. at 256.

Once the defendant has proffered a legitimate non-discriminatory reason for the challenged employment action, the burden then shifts to the plaintiff to produce some evidence showing that the employer's proffered legitimate, non-discriminatory reason is pretextual. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). For example, a plaintiff may attempt to establish that he or she was a victim of intentional discrimination "by showing that the employer's proffered

---

[10] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2106 (2000). Proof that the defendant's explanation is unworthy of credence, however, is simply one form of circumstantial evidence that is probative of intentional discrimination. *See id.* at 2108. Thus, as recognized in *Reeves*, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 2109. Yet, it is important to note that there will certainly be instances where, "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* In this regard, the Supreme Court recognized in *Reeves* that an employer would be entitled to summary judgment if, for example "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

To establish a *prima facie* case of discriminatory discharge in particular, as alleged here, a plaintiff must show (i) that she is a member of a protected class, (ii) that she was terminated, (iii) that she was qualified for her job and that her job performance was satisfactory, *i.e.* that she was meeting her employer's legitimate performance expectations at the time of termination, and (iv) that she was replaced by someone outside her protected class. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989); *Lettieri v. Equant Inc.*, 478 F.3d 640, 647 (4th Cir. 2007). Here, plaintiff's claim flatly fails on the third prong of the *prima facie* case, namely that she was meeting her employer's legitimate performance expectations at the time of her termination. Indeed, the record clearly establishes multiple incidents in which plaintiff either (i) failed to follow the

instructions of her supervisors, (ii) failed to submit work in a timely and acceptable manner, or (iii) failed to perform managerial functions that were acceptable to her supervisors. All of these alleged performance deficiencies occurred within the first six months of plaintiff's mandatory one-year probationary period, and several occurred after plaintiff had already been counseled for her alleged deficiencies in the course of the probationary review process. And, most significantly, plaintiff does not dispute that the alleged performance incidents relied on by VDSS to support her termination actually occurred. Rather, in each instance, plaintiff either attempts to explain the incidents with additional facts or to assign primary responsibility for the incidents to other VDSS employees and managerial officials. Simply put, this is insufficient to meet her *prima facie* burden, as it is the employer's performance expectations that are the relevant inquiry, not plaintiff's subjective beliefs regarding the adequacy of her work performance. *See Evans v. Technologies Applications Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (noting that "'it is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff") (citations omitted).

Moreover, even assuming plaintiff were able to establish a *prima facie* case in this instance, her discrimination claim nonetheless fails because she has failed to produce evidence showing that VDSS's proffered non-discriminatory performance-related reasons for her termination are false or pretextual. *See Reeves*, 120 S. Ct. at 2106. To be sure, the Fourth Circuit has recognized that participation by the same individual in both the hiring and firing process, as occurred here, creates a "powerful inference...that discrimination did not motivate the employer." *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991). And this is especially true where, as here, the hiring and firing took place within a relatively short period of time — particularly during a mandatory probationary period — and where the hiring and firing official is a member of the same protected class as plaintiff. *Id.*

Simply put, plaintiff has failed to overcome the "powerful inference" against the presence of racial animus in these circumstances; nor has she produced any admissible evidence supporting her contentions or suggesting that VDSS's reasons for her treatment and ultimate termination are unworthy of credence. *See Reeves*, 120 S. Ct. at 2106. For these reasons, plaintiff's Title VII race discrimination claim accordingly fails on the merits.[11]

## V.

In sum, then, although plaintiff has established that she is entitled to the benefit of equitable tolling in this instance, VDSS's motion for summary judgment must nonetheless be granted given that plaintiff (i) has failed to establish a *prima facie* case of Title VII discrimination or alternatively, (ii) has failed to produce evidence sufficient to give rise to a triable issue of fact as to whether the VDSS's proffered legitimate, non-discriminatory reasons for plaintiff's treatment and ultimate

---

[11] In addition to her discriminatory termination claim, plaintiff also appears to argue that she was subjected to disparate treatment based on her race in that (i) she was disciplined more severely than other white VDSS management officials and (ii) she did not receive adequate training in her new management position, unlike former and current white management officials. While such allegations may be sufficient to state a valid Title VII claim in appropriate circumstances, those circumstances clearly are not present here. Indeed, to establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must show (i) that she is a member of a protected class; (ii) that she was subjected to an adverse employment action; and (iii) that similarly situated employees outside her protected class received more favorable treatment. *See Causey v. Balug*, 162 F.3d 795, 802 (4th Cir. 1998); *Evans v. Tech. Applications and Services*, 80 F.3d 954, 959-60 (4th Cir. 1996). Moreover, to establish a *prima facie* case of discriminatory denial of training, in particular, a plaintiff must show (i) that she is a member of a protected class, (ii) that defendant provided training to its employees, (iii) that plaintiff was eligible for the training, and (iv) that plaintiff was not provided training under circumstances giving rise to an inference of discrimination. *See Thompson v. Potomac Electric Power Company*, 312 F.3d 645 (4th Cir. 2002) (citation omitted). Here, plaintiff has failed to produce evidence sufficient to give rise to an inference of discrimination with respect to her discriminatory denial of training claim. *Id.* Nor has she identified any similarly situated comparators with which to compare her disciplinary history, as required to state a *prima facie* case of disparate treatment under Title VII. *See Bryant v. Bell Atlantic, Md., Inc.*, 288 F.3d 124 (4th Cir. 2002) (where summary judgment was affirmed because none of the alleged comparators had engaged in the same form of misconduct as plaintiff). Accordingly, both claims fail on summary judgment.

termination are pretextual or unworthy of credence. *See Reeves*, 120 S. Ct. at 2106.

An appropriate Order will issue.


Alexandria, VA
September 10, 2008

_____
T. S. Ellis, III
United States District Judge